IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 23, 2015

## STATE OF TENNESSEE v. ALLEN ANTHONY HAMMETT

**Appeal from the Circuit Court for Sevier County
No. 18648, 18930     Rex Henry Ogle, Judge**

_____

**No. E2014-01947-CCA-R3-CD – Filed August 25, 2015**

_____

The Defendant, Allen Anthony Hammett, entered best interest guilty pleas in case number 18648 to aggravated sexual battery, a Class B felony, and in case number 18930 to violating the sex offender registry, a Class E felony. *See* T.C.A. §§ 39-13-504 (2014), 40-39-208 (2014). The trial court sentenced the Defendant as a Range I, standard offender to concurrent terms of ten years for the aggravated sexual battery conviction and two years for the registry violation. Following the guilty plea hearing, the Defendant sought to withdraw his pleas alleging that they were involuntarily and unknowingly entered and that he received the ineffective assistance of counsel. The trial court denied relief. On appeal, the Defendant contends that the trial court erred by denying his motion to withdraw his best interest guilty pleas. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Carolyn A. Linge, Knoxville, Tennessee, for the appellant, Allen Anthony Hammett.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; James B. Dunn, District Attorney General; and Timothy C. Norris, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 5, 2013, the Defendant was arrested in case number 18930 for allegedly violating the sex offender registry by not notifying the proper authorities of his change of address. The Defendant was released on bond, and he was indicted on November 5, 2013.

While case number 18930 was pending, the Defendant was charged by presentment in case number 18648 for two counts of aggravated sexual battery and was taken into custody on July 11, 2013. The trial court ordered that the Defendant would be required to post a $250,000 bond and that he undergo human immunodeficiency virus (HIV) testing pursuant to T.C.A. § 39-13-521. The order required the Defendant to have the test performed, the Defendant to pay the costs, and the results be provided to the minor victim, the police department, and the district attorney's office.

On July 29, 2013, the Defendant filed a pro se petition for a writ of habeas corpus, alleging that the jail had denied him medications crucial to the treatment of HIV and had denied his requests to meet with a physician. He asserted that cumulative missed doses might result in the development of acquired immunodeficiency syndrome (AIDS) and ultimately death. The Defendant stated that he was held in solitary confinement for twenty-three hours per day. He also alleged that he had been deprived of medications related to his pancreatitis, high blood pressure, and cholesterol. He contended that the denial of his medications and treatment and his solitary confinement resulted in cruel and unusual punishment and violations of due process and equal protection. The Defendant requested a bond reduction, release on his own recognizance, or any other relief the court deemed proper for him to obtain the necessary medical treatment. The record does not reflect that the trial court ruled on the petition.

On September 10, 2013, defense counsel filed a motion in case number 18648 to dismiss the indictment, release the Defendant on his own recognizance, or to order the Sevier County Sheriff's Office to provide all necessary medical treatment to the Defendant, including treatment for HIV. The record does not reflect that the trial court ruled on the motion.

On October 9, 2013, defense counsel filed a motion for a speedy trial on the ground that the Defendant could not post bond and that the Defendant had severe medical conditions that required treatment. The record does not reflect that the trial court ruled on the motion.

On February 25, 2014, a guilty plea hearing was held relative to both cases. The trial court advised the Defendant of his right to a jury trial, the burden of proof at a trial, the presumption of innocence, the rights to confront and cross-examine witnesses, the right to testify in his own defense, and the right to appeal. The court advised the Defendant that he should consider his attorney's opinion relative to the State's plea offer but that the "ultimate decision on pleading guilty" belonged to the Defendant. The court advised the Defendant to ask questions during the proceedings if he did not understand. The court advised that nobody would "jump on" him for asking questions and stated that it wanted to provide the Defendant with the opportunity to ask questions or to say anything relative to his case. The court noted

-2-

that it did not want the Defendant returning to court claiming he did not understand the proceedings. The court advised the Defendant that he had the absolute right to reject a plea offer and to proceed to a trial. The court also advised that the Defendant would not be punished for rejecting a plea offer.

The Defendant told the trial court that he understood his constitutional rights and that he had been previously advised of those rights. The court explained that a best interest plea was entered when a defendant denied guilt but agreed that the facts and circumstances suggested it was in his best interest to accept a plea offer. The Defendant said he understood he was entering best interest guilty pleas and that he would serve 100% of the ten-year aggravated sexual battery sentence. The court explained the terms of the plea agreement, including community supervision for life, and the Defendant said he understood. Relative to the sex offender registry violation, the Defendant understood that he was receiving a two-year concurrent sentence, for an effective ten-year sentence at 100% service. The Defendant told the court that he accepted the offer of his own free will and that he was only relying on the written plea agreement in deciding to plead guilty. The Defendant did not have any questions for the court and said that he freely and voluntarily waived his right to a jury trial and that he was pleading guilty to the offenses.

The State's recitation of the facts show that

through the testimony of Detective Tim Williams and the victim and also members of the Department of Children's Services, . . . on June 5th, 2013, the Department of Children's services received an anonymous referral that a girl was being allowed to hang out with a registered sex offender. Upon their investigation, . . . they went to her home, her reported address, and found that she was not there. Her mom reported that she was with Mr. Hammett across the way. They went to that home and found this defendant with that victim. Your Honor, she was less than thirteen years of age, and after further investigation it did reveal that he had touched her genitals, Your Honor. Those events happened in Sevier County. The address that they found him at was not his stated address and that violated the sex offender registry.

Defense counsel informed the trial court that the guilty pleas were in the Defendant's best interest under all the circumstances, although "proof point[ed] in a different direction." Counsel stated that he advised the Defendant of the community supervision for life, although counsel could not know all the rules the Defendant would be required to follow upon his release from confinement. The Defendant told the court that he understood violating any of the rules might result in criminal charges. Counsel requested and the court agreed to note on the judgments a "recommendation for special needs" because of the Defendant's HIV status.

The court noted, though, that the Tennessee Department of Correction had discretion to provide accommodations.

On March 3, 2014, the Defendant filed a pro se emergency motion to withdraw his guilty pleas because defense counsel failed to advise him of exculpatory evidence possessed by the Defendant's fiancée. The Defendant alleged that his fiancée provided counsel with the exculpatory evidence on February 21, 2014, before he entered his best interest guilty pleas. The Defendant asserted that he would not have entered guilty pleas had the exculpatory evidence been disclosed to him. He did not learn of the evidence until he spoke with his fiancée after the guilty plea hearing.

The amended motion to withdraw the Defendant's best interest pleas was submitted by subsequent counsel on May 19, 2014. The motion alleged that the Defendant's guilty pleas were involuntary and unknowing because he was denied medical treatment for a significant period of time while in confinement, which resulted in his developing symptoms of "full-blown" AIDS. He also alleged he had been placed in solitary confinement and had been refused access to nitroglycerin medication for his heart condition. The Defendant alleged he lived in constant fear of dying of AIDS or a heart attack while awaiting trial. He asserted that after his medical treatment resumed, his HIV medications were not provided consistently because the jail ran out of the medications. The Defendant also claimed he was told that he and his fiancée would face perjury charges if he insisted upon going to trial. Therefore, the Defendant argued that his declining health, his isolation in solitary confinement, and his continuing fear that his medical treatment would cease and result in his death rendered him incapable of entering voluntary and intelligent guilty pleas. He also argued that he was pressured to accept a plea offer in order to secure continued medical treatment outside of solitary confinement and to avoid additional criminal charges against himself and his fiancée.

The Defendant also alleged that he received the ineffective assistance of counsel on the grounds that defense counsel did not investigate the facts and circumstances of his case or interview witnesses before recommending he accept the plea offer, did not communicate adequately with him during the course of the proceedings, failed to provide him with the State's discovery materials, failed to keep him informed of various motions and notices filed by counsel and the prosecutor, unduly pressured him to accept the plea offer when counsel knew he wanted a trial, and failed to assist him in obtaining necessary medical treatment for HIV.

At the motion hearing, defense counsel testified that he met the Defendant during the arraignment on the aggravated sexual battery charges and that he learned the Defendant "had some sort of writ" regarding his medical condition. He knew the Defendant was HIV positive, and he brought the matter to the trial court's attention during the arraignment.

-4-

Counsel said he met with the Defendant five to ten times and talked to him on the telephone numerous times.

Defense counsel testified that although the Defendant expressed a preference for a trial, the Defendant always said he would not rule out a plea agreement. Relative to his investigation, counsel said he received discovery and reviewed records placed under seal from the Department of Children's Services (DCS) and Safe Harbor. He said the Defendant thought the Defendant's girlfriend was a crucial witness and recalled she was supposed to give counsel a cell phone containing "certain valuable information." Counsel met with the Defendant's girlfriend, who said she could not find the phone. Counsel also discussed the statement she provided to the police. He noted the police had evidence that the Defendant rented a motel room with the victim. When counsel told the Defendant's girlfriend that she would be confronted with her statement to the police relative to her saying she was always with the Defendant when he stayed at a motel, the girlfriend said, "I love [the Defendant], would do anything for him but I'm not going to lie for him."

Defense counsel testified that he provided the Defendant with the State's initial discovery materials. He recalled, though, receiving late-filed discovery on Friday before the trial date and said he discussed the materials with the Defendant but might not have provided him copies of the documents. He thought the materials were mostly related to the notice of witnesses. Counsel and the Defendant discussed obtaining a continuance because of the late notice, but counsel did not believe the trial court would exclude the witnesses. Counsel said the Defendant understood that counsel was ready for trial when they received the supplemental witness list. Counsel said the only favorable evidence was the victim's first forensic interview in which the victim identified another person as the perpetrator. Counsel noted potential problems with the admissibility of the recording and said the victim's second forensic interview inculpated the Defendant because she stated the Defendant told her to identify another person as the person who touched her. Counsel was unable to locate the other person for an interview. Counsel said the State intended to call witnesses who would testify that the Defendant reported examining the victim's vagina at the victim's mother's request. Counsel noted the victim's mother would have refuted the claim. Counsel said his investigator interviewed the victim's mother and father.

Defense counsel testified that the Defendant reviewed the recording of the victim's first forensic interview and that counsel reviewed the recording of the second forensic interview while in the prosecutor's office. Counsel told the Defendant the substance of the second recording. Counsel did not depose any witnesses, did not attempt to interview the victim, and noted that in his experience, interviewing child victims in sexual offense cases was difficult and only "facilitated" by the police. In counsel's review of the sealed records, he learned damaging information and became concerned the Defendant might face child rape

charges. Counsel and the Defendant discussed his findings and the potential for additional charges. Counsel told the Defendant that the plea agreement contained a provision prohibiting any additional charges relative to the victim.

Defense counsel testified that he told the Defendant's girlfriend that she might face perjury charges if she testified contrary to the statement she provided the police officers. Counsel recalled receiving a notice of enhanced punishment and the Defendant's criminal history. Although he did not recall discussing the specific documents with the Petitioner, counsel recalled discussing the Defendant's previous convictions and his career offender status. Counsel told the Defendant that he faced a potential sentence of thirty years for each aggravated sexual battery charge.

Defense counsel testified that he initially asked the sheriff's department to provide the Defendant proper medical care. He said that after the sheriff's office failed to provide the proper care, he contacted the American Civil Liberties Union. He filed a motion, requested a hearing, and subpoenaed the sheriff, county mayor, and the county attorney for the hearing. Counsel said that the day before the hearing was scheduled, "they" scheduled an appointment for the Defendant to meet with the "HIV specialist." The hearing was never held. The trial court noted that an agreed order was entered satisfying the concerns raised in counsel's motion and that "things got moving" after the order was entered. Although counsel did not recall when the Defendant began receiving the proper care, he agreed it was several months after the Defendant's arrest. Counsel agreed that the Defendant was focused on his lack of medical care and noted that the Defendant was "obsessed" with getting his previous Florida conviction overturned because the Defendant claimed he was innocent.

Defense counsel testified that he and the Defendant discussed a plea agreement early in the case because of the Defendant's exposure as a convicted sexual offender. Counsel thought the Defendant would be convicted at a trial unless the victim did not testify. At a meeting on the Friday before the Defendant pleaded guilty, counsel said he and his investigator talked to the Defendant about the evidence. Counsel said that although the Defendant was unenthusiastic about pleading guilty, the Defendant agreed it was in his best interest. Counsel acknowledged he told the Defendant that the Defendant was either guilty or the unluckiest person in the world. Counsel said he told the Defendant that he would be placed on community supervision for life and that he would serve 100% of the ten-year sentence.

Defense counsel testified that at the guilty plea hearing, the Defendant made a statement that was not transcribed by the court reporter. Counsel said that in retrospect he should have brought the matter to the trial court's attention. He recalled that the court asked the Defendant if he was knowingly and voluntarily pleading guilty and in his best interest and

that the Defendant said, "[Y]es, sir," and "sort of stuck his head down . . . and said, '[N]ot really.'" Counsel received a telephone call from the Defendant's fiancée about thirty minutes after the Defendant entered his guilty pleas. The Defendant's fiancée told counsel the Defendant wanted to set aside his guilty pleas. Although counsel did not file a motion to set aside the guilty pleas, he wrote the Defendant stating that the Defendant would have to allege counsel's incompetence and that he needed another attorney for the task.

Defense counsel testified that he was confused regarding the evidentiary value of the cell phone the Defendant's fiancée could not locate. He understood that the phone contained photographs of the victim taken by the other person the victim identified as the perpetrator during her first forensic interview and that the photographs were posted on Facebook. He thought he attempted to find the photographs on Facebook but was uncertain. Counsel did not file a motion to suppress the Defendant's statement made after his arrest relative to the sex offender registry violation.

On cross-examination, defense counsel testified that on January 8, 2014, he filed a notice relative to a motion for an in-camera inspection and discovery of the DCS records, a motion for discovery relative to the forensic interview, and a motion to publish any records and compel case workers to testify about any relevant DCS records. Counsel recalled that DCS agreed to provide its records and that Safe Harbor filed its records under seal. Relative to the Defendant's medical care, counsel agreed a subsequent order was entered on September 30, 2013, requiring the sheriff's office to continue the Defendant's medical treatment.

Defense counsel testified that the Defendant had above-average intelligence and that the Defendant discussed his legal research abilities and his providing legal services while in a Florida prison. Counsel thought it was in the Defendant's best interest to accept the plea offer and said the Defendant agreed. Counsel recalled the Defendant faced a six-year sentence for the sex offender registry violation even if the Defendant were acquitted of the sexual battery charges. Counsel agreed he requested during a bench conference after the Defendant entered his guilty plea that the Defendant serve his sentence in a special needs facility because of the Defendant's medical condition. Counsel said the trial court agreed to place the request in the judgments.

On redirect examination, defense counsel testified that he reviewed all of the records submitted by DCS and Safe Harbor. He recalled the records reflected that the victim had a "reassuringly normal" medical exam. Although he did not discuss the matter with the Defendant, he said that generally medical experts would testify that such findings were expected with the vaginal touching allegation against the Defendant.

The Defendant testified that he was arrested on July 11, 2013, and that he had filed a petition for a writ of habeas corpus before his arraignment because he was not receiving medication and treatment for his numerous medical conditions. He requested medical treatment but did not receive it. He was housed in solitary confinement. The Defendant discussed his petition with defense counsel at the arraignment. The Defendant said that the trial judge treated his petition as a motion for bond. The Defendant recalled that his petition was denied and that the court did not lower his bond.

The Defendant was not treated by an infectious disease specialist until October 2, 2013. The medical records reflect that on October 2, the Defendant underwent laboratory analysis of his blood and that on October 18, the Defendant resumed his HIV treatment. The physician recommended that the Defendant keep his nitroglycerin tablets with him at all times for his frequent chest pains. The records reflect the physician concluded that the Defendant had poor insight and judgment, memory impairment, seizure tremors, anxiety, and depression and that his poor mental health was the result of solitary confinement and the denial of medical treatment.

The Defendant testified that as a result of not receiving his medication, he began to develop AIDS. He began to suffer from headaches, nausea, vomiting, and weight loss. He was never permitted to keep his nitroglycerin tablets with him in solitary confinement. He recalled the correction officers' taking his prescribed medication from him during "shake . . . down[s]" at the jail.

Upon questioning by the trial court, the Defendant testified that at the relevant time, the correction officers did not routinely monitor the solitary confinement area at the jail. The Defendant said that when the trial judge asked him if he was freely and voluntarily pleading guilty, he mumbled under his breath "not really" because he did not want to "take" the plea offer. He agreed, though, he did not bring the matter to the judge's attention. He said that although the judge told him to ask questions and raise any concerns, the Defendant said he did not understand he could tell the judge that he did not want to plead guilty. The Defendant said he had pleaded guilty twenty years previously. The court reviewed the guilty plea hearing transcript, and the Defendant recalled the judge's stating that the Defendant had an absolute right to reject the plea offer and proceed to a trial and that the Defendant would not be punished for rejecting a plea offer. The Defendant also recalled that he told the judge that he was entering his guilty pleas of his own free will and that he told the judge that he did not have any questions. The Defendant said, though, that he did not want to enter his guilty pleas. He said that he did not say anything to the judge because he did not know what would happen with his medications and because he was scared he was going to die.

The Defendant testified that while he was deprived of his medications, he maintained records of when he was denied his nitroglycerin medication and his inhaler. He said that after his physician began treating him for HIV, he did not receive his medications consistently. He recalled that he was denied his medications on at least three occasions and that he was denied his medications about one week before he entered his guilty pleas. He said he was preoccupied about his medications while preparing for the trial and while deciding whether to accept the plea offer.

The Defendant testified that his medication concerns affected his decision to plead guilty because a fellow inmate and a couple of jail correction officers told him that he would receive better treatment in the Tennessee Department of Correction. Upon questioning by the trial court, the Defendant agreed he told the judge at the guilty plea hearing that he was only relying upon the plea agreement when he pleaded guilty.

The Defendant testified that he and defense counsel did not discuss the potential child rape charges and that counsel only said that if he rejected the plea offer, the State would probably file additional charges. The Defendant admitted reviewing the recording of victim's first forensic interview but denied reviewing the recording of the second interview. He said he did not know that the child rape charges would be dismissed and that the State would not seek any additional charges if he pleaded guilty.

The Defendant testified that he and defense counsel met four or five times before he entered his guilty pleas. He said that during those meetings, he told counsel that he did not want to plead guilty and that he wanted a trial. He said that until the Friday before the trial date, counsel said he was ready for trial and was optimistic about the outcome. He said counsel's opinion changed after counsel spoke to the Defendant's fiancée that day. The Defendant said counsel told him that he always reached a plea agreement in these types of cases and that he never took them to trial. The Defendant recalled counsel told him that he was either guilty or the unluckiest person in the world.

The Defendant testified that defense counsel never played the recordings of his statements to the police and that they did not discuss them. He said they discussed his previous convictions, although counsel told him that his innocence in the Florida conviction was irrelevant. He said counsel did not appear concerned about his previous convictions. The Defendant learned after he pleaded guilty that his fiancée spoke with the police. He said that his fiancée recanted her statements to the police and to counsel and that she told counsel on the day of the guilty plea hearing she was recanting her statements.

The Defendant testified that he never reviewed the recording of the second forensic interview due to technical difficulties and that defense counsel never discussed whether the recording was exculpatory or inculpatory. The Defendant likewise did not review the notices for enhanced punishment and said he received them after he pleaded guilty. Relative to the plea agreement, the Defendant said counsel told him the terms of the agreement in the courtroom on the day he pleaded guilty. He clarified for the trial court, though, that counsel recommended that he plead guilty on the Friday before he entered his best interest guilty pleas and that the recommendation was made without knowing the terms of the agreement. He said that on Friday, counsel said the offer would be for twelve years, although he denied agreeing to serve twelve years.

The Defendant testified that on the day of the guilty plea hearing, he wanted to discuss the plea offer with his fiancée but that he was told there was not enough time and that he needed to decide if he wanted to accept the ten-year offer. He said that he did not know until the day he pleaded guilty that he was a violent offender and that he would serve 100% of the aggravated sexual battery sentence.

The Defendant testified that he pleaded guilty because he thought he would receive better medical care. He felt that defense counsel forced him to plead guilty and that nobody was "in [his] corner" after counsel said he was guilty or the unluckiest person. The Defendant said he would not have pleaded guilty had it not been for the lack of medical care and counsel's poor handling of his case.

On cross-examination, the Defendant testified that he only spoke to defense counsel by telephone once and that their in-person meetings at the jail were five to six to minutes. The Defendant said the only lengthy meeting was when he reviewed the recording of the victim's first forensic interview. He admitted he had previous convictions for burglary and accessory before the fact in a burglary-related case. He identified the motion he filed with the trial court requesting a hearing regarding his emergency motion to withdraw his guilty pleas. The motion was filed February 28, 2014. He said that he drafted his emergency motion on February 25, the day he entered his guilty pleas, and that he mailed it on February 28. He agreed the date on the motion was February 25.

The Defendant testified that his motion to withdraw his best interest guilty pleas was based upon the evidence on the cell phone. He told defense counsel about the phone. Although he denied stating that the phone contained photographs of the victim, he admitted he told counsel that the other alleged perpetrator's "accounts" were on the phone. The Defendant wanted counsel to know the type of person the other alleged perpetrator was and to use the phone to identify the true perpetrator. The Defendant said counsel never called his fiancée about the phone. He denied telling the police that he touched the victim's vagina.

He said he told the police that the victim's mother requested he look at the victim's vagina and that he looked while in the victim's mother's presence. He denied touching the victim. He denied he and counsel discussed the potential punishments he faced if convicted. The Defendant admitted counsel told him that the Defendant's previous convictions would affect any sentence he received. He said he understood he pleaded guilty as a Range I offender, although his previous convictions resulted in a Range II classification. He said neither counsel nor anyone at the jail threatened him to plead guilty. He agreed, though, he felt pressured by his circumstances to plead guilty. On redirect examination, he testified that he felt physically threatened because he had been denied medical treatment for HIV for five months.

The trial court discussed the Defendant's fiancée's inconsistent statements relative to the Defendant's asking her to tell the police that she was always with the Defendant when he rented a motel room and whether she was with the Defendant when the incident in the present case occurred. The court found that defense counsel talked to the Defendant about "those things." The court found that the Defendant knew his sentencing range and that the plea offer was for ten years, although it was originally twelve years. The court noted the strong evidence against the Defendant.

The trial court concluded that no manifest injustice had occurred because the Defendant was advised of his rights, was provided the opportunity to ask questions at the guilty plea hearing, and told the court that he understood what he was doing by pleading guilty. The court noted that although the Defendant allegedly said under his breath at the guilty plea hearing "not really," the Defendant knew enough to ask the court questions. The court found that the Defendant said he was pleading guilty because it was in his best interests. The court found that the Defendant had "buyer's remorse."

The trial court found that although it was concerned about the Defendant's not receiving medical treatment in the earlier stages of the proceedings, the Defendant's actions during the guilty plea hearing and afterward indicated that the Defendant entered his pleas knowingly. The court credited defense counsel's testimony that on Friday before the guilty plea hearing, counsel and the Defendant discussed the Defendant's pleading guilty and that counsel continued to negotiate, ultimately reaching an agreement for ten years' confinement. The court found that the Defendant signed the plea agreement and told the court that he was not being forced to plead guilty. The court noted it told the Defendant that counsel could not make him plead guilty. The court found that counsel provided proper representation "exceeding" the constitutional standards for effective presentation and that the Defendant entered free and voluntary best interest guilty pleas. Relative to counsel's efforts to obtain the Defendant proper medical care, the court found that counsel went "above and beyond" and was able to secure the proper care. The court found that counsel properly communicated

with the Defendant about the evidence against him and the range of penalties. This appeal followed.

The Defendant contends that the trial court erred by denying his motion to withdraw his guilty pleas. He argues that his pretrial incarceration without proper medical care rendered his best interest guilty pleas involuntary and that defense counsel provided the ineffective assistance of counsel. The State responds that the trial court properly denied the motion. We agree with the State.

Tennessee Criminal Procedure Rule 32(f) permits a defendant to withdraw a guilty plea after a sentence is imposed but before a judgment becomes final only to "correct [a] manifest injustice." Tenn. R. Crim. P. 32(f)(2). A defendant has the burden of establishing a guilty plea should be withdrawn to correct a manifest injustice. *State v. Turner*, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). The standard of review on appeal relative to a trial court's decision whether to grant a motion to withdraw is abuse of discretion. *State v. Drake*, 720 S.W.2d 798, 799 (Tenn. Crim. App. 1986); *see Henning v. State,* 201 S.W.2d 669, 671 (Tenn. 1947). Although manifest injustice is not defined by procedural rules or statute, this court has stated it must be determined on a case-by-case basis. *Turner*, 919 S.W.2d at 355. A trial court may permit a defendant to withdraw his guilty plea to prevent a manifest injustice, in relevant part, when a guilty plea was involuntarily and unknowingly entered and when a defendant received the ineffective assistance of counsel in connection with the entry of the plea. *State v. Crowe*, 168 S.W.3d 731, 742 (Tenn. 2005). A defendant, though, is not permitted to withdraw a guilty plea simply because he has a change of heart or is dissatisfied with the sentence imposed. *Turner*, 919 S.W.2d at 355.

**Involuntary Guilty Plea**

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because]

[s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Although the Defendant argues that his best interest guilty pleas were entered under duress and fear of death because of the lack of proper medical care during his pretrial confinement, the record reflects that the Defendant entered knowing, voluntary, and intelligent guilty pleas. At the guilty plea hearing, the trial court advised the Defendant of his right to a jury trial, the burden of proof at a trial, the presumption of innocence, the rights to confront and to cross-examine witnesses at a trial, the right to testify in his defense, and the right to an appeal. The Defendant told the court that he understood his rights and that defense counsel had advised him of those rights before the hearing. The court told the Defendant that the decision to accept a plea offer was his alone and that he should ask the court questions if he did not understand the proceedings. Furthermore, the court told the Defendant that nobody would be angry with him for asking questions and advised the Defendant that he had an absolute right to reject a plea offer and to proceed to a trial. The Defendant had no questions for the court and expressed no reservations about entering his pleas or wanting a trial.

The Defendant told the trial court that he understood the terms of the plea agreement, understood he would serve 100% of the effective ten-year sentence, and understood he was subject to community supervision for life upon release. The Defendant stated that he was accepting the plea offer of his own free will and that he was relying only upon the terms of the agreement in deciding to enter best interest guilty pleas. The Defendant, likewise, told the court that he was freely and voluntarily waiving his right to a trial and wanted to plead guilty.

We note that when the Defendant was asked if he was freely and voluntarily pleading guilty, he told the trial court, "[Y]es, sir." Although the Defendant then stated "not really" in a voice inaudible to the trial court and the court reporter, the Defendant was provided ample opportunity to inform the court that he wanted to reject the plea offer and proceed to a trial. To the contrary, the record reflects that the Defendant voluntarily, knowingly, and intelligently pleaded guilty.

Relative to the Defendant's poor medical care before he entered his best interest guilty pleas, the record reflects that defense counsel was concerned the Defendant was being denied proper medical treatment for his numerous medical conditions, including HIV. Counsel's credited testimony shows that he requested the sheriff's department provide the Defendant with treatment, that the sheriff's department failed to provide it, and that counsel contacted the American Civil Liberties Union. Upon counsel's filing his September 10, 2013 motion addressing the lack of jail medical care, his requesting a hearing, and his issuing subpoenas

-13-

for the sheriff, county mayor, and county attorney, an agreed order was entered satisfying counsel's concerns in the motion. On October 2, the Defendant began receiving treatment from an infectious disease specialist, and on October 18, he resumed his medications. Although the Defendant testified that his treatment was inconsistent, we note that the Defendant did not inform the trial court at the guilty plea hearing of his concerns relative to his medical treatment, although the court provided him the opportunity to address any matters related to his case. The record does not reflect that the Defendant raised concerns about his treatment with anyone after October 2. We note the Defendant entered his guilty pleas on February 25, 2014, more than four months after his treatment resumed. The record does not support a conclusion that the Defendant feared a deprivation of proper medical care at the time he entered guilty pleas. The trial court did not abuse its discretion by concluding that the Defendant entered knowing, intelligent, and voluntary guilty pleas, and he is not entitled to relief on this basis.

### Ineffective Assistance of Counsel

To establish a claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . , are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Defendant argues that defense counsel provided ineffective assistance by not bringing to the trial court's attention at the guilty plea hearing that the Defendant stated under his breath that he did not want to plead guilty. He argues counsel should have told the court and should have requested time to discuss the matter further to determine if the Defendant truly wanted to plead guilty. The record reflects that counsel admitted he should have brought the matter to the court's attention, and we agree that counsel's failure constituted deficient performance. However, counsel's credited testimony reflects that although the Defendant was unenthusiastic about entering guilty pleas, the Defendant agreed it was in his best interest based on the State's witnesses, the victim's second recorded forensic interview, the potential for child rape charges, and his previous convictions. At the guilty plea hearing, the court provided the Defendant the opportunity to ask questions and to reject the plea offer. Instead, the Defendant told the court that he was freely and voluntarily entering guilty pleas because it was in his best interest to plead guilty. Counsel's deficient performance in this regard did not result in prejudice. The record does not reflect that the Defendant would have requested a trial had counsel informed the court of the Defendant's statement. To the contrary, the Defendant was provided ample opportunity to inform the court of his wishes if he wanted to proceed to a trial. The Defendant is not entitled to relief on this basis.

The Defendant also argues that defense counsel failed to communicate adequately with him before the guilty plea hearing relative to the evidence against him and the consequences of entering guilty pleas. He also asserts that he never reviewed the recording of the victim's second forensic interview in which she stated that the Defendant told her to identify another perpetrator, that he never reviewed the discovery materials, and that he was not afforded a reasonable opportunity to consider the plea offer.

Defense counsel's credited testimony reflects that counsel and the Defendant met four or five times and that they talked on the telephone numerous times. Counsel provided the Defendant with the State's initial discovery materials. Counsel received additional materials relative to the State's trial witnesses on the Friday before the scheduled trial date. Although counsel might not have provided the Defendant copies of the additional materials, counsel and the Defendant discussed them and whether to obtain a continuance because counsel did not believe the trial court would prohibit the witnesses from testifying. After discussing the additional materials, counsel concluded that the only favorable evidence was the victim's first forensic video, although counsel believed admissibility of the recording might have been problematic. The State intended to present witnesses who would have testified that the Defendant reported examining the victim's vagina at her mother's request. Counsel knew the

victim's mother would have refuted the allegation because the defense investigator interviewed the victim's mother and father during the course of the pretrial investigation. Counsel believed the Defendant would have been convicted at a trial unless the victim did not testify. At the conclusion of the Friday meeting, counsel advised that a plea agreement was in the Defendant's best interest, and the Defendant agreed.

Relative to the recording of the victim's second forensic interview in which she inculpated the Defendant, defense counsel reviewed it in the prosecutor's office because of technical difficulties when counsel and the Defendant attempted to review it at the jail. Counsel told the Defendant the substance of the victim's interview statements. After counsel reviewed the DCS and Safe Harbor records, he concluded that the Defendant could have been charged with child rape. Counsel and the Defendant discussed the contents of the records and counsel's fear of additional charges. Counsel told the Defendant a plea agreement would include a prohibition against additional charges relative to the victim. Counsel and the Defendant discussed the Defendant's career offender classification and the potential punishment of thirty years for each aggravated sexual battery charge. Counsel and the Defendant discussed a plea agreement early in the case because of the Defendant's being a convicted sex offender. We conclude that the trial court did not abuse its discretion by determining that counsel provided effective assistance and by denying the Defendant's motion to withdraw his guilty pleas. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE